# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

───────────────

**No. ACM 39765**

───────────────

**UNITED STATES**
*Appellee*

**v.**

**Jacob T. OROSCO**
Airman (E-2), U.S. Air Force, *Appellant*

───────────────

Appeal from the United States Air Force Trial Judiciary

Decided 9 February 2021

───────────────

*Military Judge:* Jennifer E. Powell.

*Sentence:* Sentence adjudged on 22 April 2019 by GCM convened at Cannon Air Force Base, New Mexico. Sentence entered by military judge on 29 July 2019: Bad-conduct discharge, confinement for 14 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Amanda E. Dermady, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

───────────────

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

───────────────

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone found Appellant, in accordance with his pleas and a pretrial agreement (PTA), guilty

of four specifications of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] Appellant was sentenced to a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. Consistent with the terms of the PTA, the convening authority approved only 14 months of confinement. Otherwise, the convening authority took no additional action on the adjudged sentence.[3]

Appellant raises three issues on appeal: (1) whether trial counsel engaged in prosecutorial misconduct by making improper arguments during sentencing argument; (2) whether he is entitled to sentence relief because his case was not timely docketed with this court; and (3) whether this court should exercise its Article 66, UCMJ, 10 U.S.C. § 866, authority to address an unpreserved objection of unreasonable multiplication of charges for sentencing. We have carefully considered issue (2) and determined it does not warrant relief.[4] *See United*

---

[1] All references in this opinion to the punitive articles of the Uniform Code of Military Justice (UCMJ), are to the *Manual for Courts-Martial, United States* (2016 ed.). The charges and specifications were referred to trial after 1 January 2019; as such, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.). *See* Exec. Order 13,825, §§ 3 and 5, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

[2] An Additional Charge and Specification, which alleged that Appellant assaulted AV by unlawfully touching her buttocks with his hand on 4 August 2018, in violation of Article 128, UCMJ, 10 U.S.C. § 928, was preferred on 15 April 2019—the same day the PTA was signed by all parties—and referred to trial on 18 April 2019. As part of his PTA, Appellant waived his right to an Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing on the Additional Charge, and waived the statutory five-day waiting period of R.C.M. 602(b)(2).

[3] Consistent with the respective opinions of the judges of this panel in *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.), and subsequent opinions, we find no error in the convening authority's decision to "take no other action on the sentence in this case."

[4] Appellant argues he is entitled to relief because his case was not docketed within 30 days of the convening authority's Decision on Action memorandum. In *United States v. Livak*, 80 M.J. 631, 633–34 (A.F. Ct. Crim. App. 2020), we applied an aggregate 150-day threshold standard from *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The 150 days encompasses the day an appellant is sentenced until docketing. *See Moreno*, 63 M.J. at 142. This threshold protects an appellant's due process right to timely post-trial and appellate review and is consistent with *Moreno*. In Appellant's case, it took the Government 144 days from the conclusion of trial to docketing of his

*States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With regard to the remaining issues, we find no prejudicial material error to a substantial right of Appellant, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty in January 2016. At the time he committed the offenses he was stationed at Cannon Air Force Base, New Mexico. The victim in this case, AV, was also stationed at Cannon Air Force Base.[5]

On 4 July 2018, Appellant met AV on "Tinder," an online dating application. Appellant and AV talked by phone and text message and met each other for the first time in person shortly after midnight on 4 August 2018, when AV went to Appellant's dormitory room on base. Shortly after her arrival, Appellant, who was intoxicated, asked her to drive him off base to purchase additional alcohol. They were unable to purchase additional alcohol and soon returned to Appellant's room.

When they returned to Appellant's room, AV asked Appellant if she could use his bathroom. When she came out of his bathroom, she received a text message from a friend asking where she was. AV told Appellant she was going to leave to give her friends a ride, however, Appellant insisted that she stay. Appellant then became aggressive with AV, and over the next few minutes, Appellant touched and slapped AV repeatedly on her buttocks and her face, bit her neck and ears, and choked her neck, eventually causing her to break her glasses and lose an earring. AV told Appellant more than once that she wanted to leave because her friends were expecting her, but Appellant insisted that she stay. At some point, Appellant forced AV on her knees and forced her to perform oral sex on him. After trying several times, AV was ultimately able to get away from Appellant, leave his room, and make it to her car.

AV texted her friends from her car to let them know she was on the way. As she was pulling out of the parking lot, Appellant, who was shirtless, ran to her car and jumped into the passenger seat. As AV was driving, Appellant again grabbed AV's neck with his hand and started choking her; he also slapped her on the face with his hand. AV told Appellant to stop and get out of the vehicle, but he did not. In an effort to stop Appellant, AV tried to choke Appellant, slap him, and scratch him, however she had no success. Appellant repeatedly told AV to park the vehicle and return to his room with him. AV

---

case with this court, below the 150-day threshold for a showing of a facially unreasonable delay. We find no violation of Appellant's due process rights and no basis to grant relief under Article 66(d), UCMJ, 10 U.S.C. § 866(d).

[5] AV was an enlisted member of the United States Air Force at the time of the offenses.

refused and told him she would stop the car for him to get out of the vehicle, but she was not going to go back to his room.

AV estimated Appellant was in her car for 10 to 20 minutes. AV stopped her vehicle in the middle of a parking lot, after two Security Forces patrolmen pulled up behind her vehicle. The patrolmen approached AV's vehicle and asked what was happening. The patrolmen asked Appellant why he did not have a shirt on and asked for his identification, which Appellant had left in his dormitory room. While one patrolman escorted Appellant back to his room to retrieve his identification and a shirt, AV told the other patrolman what had happened. The patrolman noted that AV was visibly shaking and appeared scared.

During his providence inquiry, Appellant stated that he "lightly slapped" AV's face five to ten times with an open hand, that he "lightly choked" AV's neck with his hands three or four times, that he "lightly bit" AV on her neck and ear several times with his mouth, and that he "lightly slapped or spanked" AV three to five times on her buttocks with his hand. During the portion of his providence inquiry involving the slapping of AV, Appellant noted he was "very intoxicated" and thought she was consenting to his acts, but "realize[d] she was not and did not consent to being struck on her face," noting "no reasonable sober person would have thought she was consenting." Appellant acknowledged he slapped and choked AV in his dormitory room and in AV's car.

Appellant stipulated that AV did not initiate physical violence or threaten Appellant. Appellant also agreed that he could have avoided doing bodily harm to AV, and that there was no justification or authorization for him to touch, strike, choke, or bite AV at any point during their interactions. Finally, at no point in the evening did AV consent to being touched anywhere on her body.

Appellant initially faced three charges with a total of six specifications, with all charges occurring within less than the span of one hour, on 4 August 2018. The first of those charges, Charge I, included two specifications of sexual assault against AV, in violation of Article 120, UCMJ, 10 U.S.C. § 920, alleging Appellant committed a sexual act upon AV by penetrating her mouth with his penis, by causing bodily harm to her, without her consent; and abusive sexual contact, in that Appellant committed sexual contact upon AV by touching her buttocks through the clothing with his hand, causing bodily harm to her, with an intent to gratify his sexual desire. Charge II and an Additional Charge make up the remaining four specifications for assault consummated by a battery of AV in violation of Article 128, UCMJ, to which Appellant pleaded guilty. Pursuant to the PTA, Charge I and its two specifications were withdrawn and dismissed after sentence was announced.

## II. DISCUSSION

### A. Challenges to the Trial Counsel's Sentencing Argument

#### 1. Additional Background

As part of the stipulation of fact, where Appellant "expressly waive[d] any objection he may have to admission of these facts into evidence at trial," Appellant agreed to the admission of two attachments: AV's video-recorded interview with Air Force Office of Special Investigation (AFOSI) agents and her subsequent written statement. In those attachments, AV described the sexual acts Appellant committed against her.

During argument, trial counsel referred to the charged sexual assault allegations. After briefly describing the facts related to the charges and specifications to which Appellant pleaded guilty, trial counsel stated, "At one point, [Appellant] forced [AV] to her knees and shoved his penis in her mouth. She did not give him permission. He just violently took what he wanted." Trial counsel later stated, Appellant "wanted to violently take control of [AV] and he wanted to have sex with her at any cost. Her desires weren't part of the equation and he attacked her to make her submit to him." Trial counsel later argued that Appellant "tried to force [AV] to satisfy his sexual desires. He needs time in confinement to evaluate that choice."

At no time during trial counsel's relatively brief argument[6] did trial defense counsel object to trial counsel's statements.

#### 2. Law

Prosecutorial misconduct and improper argument are questions of law that we review de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citing *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017)).

Because there was no objection at trial we review for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). "Plain error occurs when (1) there is error, (2) the error is clear or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *Andrews*, 77 M.J. at 401 (quoting *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005))), *cert. denied*, 140 S. Ct. 2566 (2019). "Thus, we must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (citations and internal quotation marks omitted). The

---

[6] Trial counsel's argument comprises less than three pages of the record.

burden to establish plain error, including prejudice, is on the appellant. *Id.* at 9, 12.

When determining prejudice, we look at the cumulative impact of the improper argument on an appellant's substantial rights and the fairness and integrity of his trial, and weigh three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the sentence. *Fletcher*, 62 M.J. at 184; *see also Voorhees*, 79 M.J. at 12; *Halpin*, 71 M.J. at 480.

Not every improper comment by the prosecution is a constitutional violation. *United States v. Webb*, 38 M.J. 62, 65 (C.M.A. 1993) (citation omitted). Instead, we evaluate the comment in the context of the overall record and the facts of the case. *Id.* (citations omitted). Uncharged misconduct is not "*ipso facto* inadmissible in a case in which an accused has pleaded guilty" and can demonstrate a "course of conduct" directly related to the convicted offense. *United States v. Silva*, 21 M.J. 336, 337 (C.M.A. 1986) (citations omitted).

The United States Supreme Court has observed that "it is important that both the defendant and prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson*, 485 U.S. 25, 33 (1988). A trial counsel is permitted to make a "fair response" to claims made by the defense, even where a constitutional right is at stake. *Id.* at 32. However, "[w]hen arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citations omitted).

We also recognize that the lack of defense objection is some measure of the minimal prejudicial impact of the trial counsel's argument. *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (citation omitted). We consider whether "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" *Erickson*, 65 M.J. at 224 (quoting *Fletcher*, 62 M.J. at 184). Where the weight of the evidence amply supports the sentence imposed, we can be confident Appellant was sentenced on the basis of the evidence alone. *Halpin*, 71 M.J. at 480.

**3. Analysis**

In this judge-alone trial, Appellant takes issue with the overall theme of the trial counsel's sentencing argument. Appellant contends trial counsel wanted to paint Appellant as a "violent sexual predator." In this case, our decision does not depend on whether any part of trial counsel's sentencing argument was, in fact, improper. Rather, we conclude that Appellant failed to meet his burden of establishing the third prong of the plain error analysis. We find

that the presentation of these matters did not substantially influence Appellant's sentence, nor otherwise materially prejudice a substantial right of Appellant. Finding he did not suffer any material prejudice, Appellant is not warranted relief under a plain error review.

Our analysis begins with the first *Fletcher* factor—the severity of the misconduct. Trial counsel argued from facts agreed upon by Appellant, and without objection from trial defense counsel.[7] Trial counsel's argument was short and concise, focusing on Appellant's charged offenses. He did not argue facts outside the record, and while he did make inferences to Appellant's sexually-related behavior, the record shows those inferences were reasonable and derived from the evidence. *See Baer*, 53 M.J. at 237.

The second factor—the measures adopted to cure this misconduct—does not add much to the analysis, as this was a judge-alone sentencing case. Although the military judge listened to trial counsel's argument without interruption and did not make any comment regarding trial counsel's argument, she had no obligation to do so. *See United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citations omitted). "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *Id*. (citation omitted). We will presume that the military judge was able to distinguish between proper and improper sentencing arguments. Appellant argues that "this [c]ourt cannot be confident that the military judge did not consider the Government's improper argument;" however, Appellant failed to provide any evidence to rebut the presumption that the military judge followed the law and disregarded any improper sentencing argument, nor is there anything in the record indicating the military judge sentenced Appellant for the withdrawn and dismissed Article 120, UCMJ, charge and its specifications.

Finally, we look at the third *Fletcher* factor—the weight of the evidence. The stipulation of fact, which included AV's verbal and written statements to law enforcement, was the primary evidence against Appellant. While Appellant appeared to minimize his misconduct during his providence inquiry, the stipulation of fact and its attachments painted a more violent portrayal of Appellant's misconduct, interrupted only by a fortuitous encounter with base law enforcement. Appellant not only repeatedly assaulted AV while in his dormitory room, but after AV was able to get away from him and make it to her car, Appellant chased after her, jumped in her car, and repeatedly assaulted her

---

[7] The court notes that the military judge was never asked to rule on the admissibility of this evidence as an aggravating circumstance under R.C.M. 1001(b)(4), or on the continuing course of conduct. *See Silva*, 21 M.J. at 337.

again. The weight of the evidence, excluding references to the sexual conduct, fully supports the adjudged sentence.

Having assessed the facts of this case with the *Fletcher* factors, we conclude that that there was no material prejudice to Appellant's substantial rights and therefore no relief is warranted.

## B. Allegation of Unreasonable Multiplication of Charges

Appellant has requested this court exercise its Article 66, UCMJ, authority to address an *unpreserved* objection of unreasonable multiplication of charges for sentencing. Appellant was convicted of four specifications of assault, all of which occurred within the span of one hour.

An "express waiver of any waivable motions" as part of a PTA "extinguishe[s] his right to raise these issues on appeal" unless the waiver is of a fundamental right. *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009). Unreasonable multiplication of charges is a waivable motion. *Id.*

Courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. R.C.M. 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." However, Appellant expressly waived "any waivable motions" as part of his PTA, one that appeared to give him significant benefits. In turn, Appellant waived any legal claims he may have had regarding unreasonable multiplication of charges on this appeal. This being the case, we need not reach the issue of whether the specifications were in fact facially duplicative, and we decline to pierce Appellant's waiver on this issue. *See United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016).

### III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court